IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Case Action No. 3:21-cv-319-MOC-DCK

| | |
|---|---|
| WES JOHNSON, and TAMEKIA BOTTOMS, individually and on behalf of all other similarly situated, The AAA Carolinas Savings & Investment Plan and The Auto Club Group Tax Deferred Savings Plan,<br><br>Plaintiffs,<br><br>v.<br><br>CAROLINA MOTOR CLUB, INC. d/b/a AAA Carolinas and THE AUTO CLUB GROUP, INC.,<br><br>Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' AMENDED COMPLAINT** |

**NOW COME** Defendants, Carolina Motor Club, Inc. d/b/a AAA Carolinas ("AAA Carolinas") and The Auto Club Group .[1] ("ACG") (collectively, "Defendants"), and respectfully submit this memorandum of law in support of their motion for partial dismissal, with prejudice, of Plaintiffs' Class Action Amended Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1.

## INTRODUCTION

Plaintiffs' Complaint is part of a tsunami of over 135 similar lawsuits filed across the country in the last two years. These cookie cutter complaints consist of generic, formulaic assertions about plan management and investment strategies, with a smattering of hindsight allegations based on cherry-picked data and inapt comparators. Their goal: survive a motion to dismiss to steer the case to an early settlement more favorable to the plaintiffs' lawyers than the

---

[1] Incorrectly identified in the Complaint as The Auto Club Group, Inc.

class members.

The Complaint here follows the same rote path. The Named Plaintiffs are former participants in the AAA Carolinas Savings & Retirement Plan ("Plan")[2] who claim Defendants breached their duties under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq*. ("ERISA") by retaining allegedly overpriced, underperforming Plan investments which were not sufficiently diversified and by failing to control Plan recordkeeping costs by using revenue sharing to pay the Plan's recordkeeper. Like so many of the recently filed complaints, Plaintiffs' claims fail as a matter of law for multiple reasons.

As a threshold matter, the majority of Plaintiffs' claims are untimely. Under ERISA, a breach of fiduciary duty claim must be filed by the earlier of: (1) "six years after the date of the last action which constituted a part of the breach," or (2) "three years after the earliest date on which the plaintiff had actual knowledge of the breach." 29 U.S.C. § 1113(1)-(2), ERISA § 413(1)-(2). Plaintiffs' Complaint was filed on July 6, 2021. Accordingly, any claims based on allegations before July 6, 2015 are time barred.

Alternatively, Plaintiffs plead facts insufficient to sustain their claims. The case law is clear: a fiduciary does not violate ERISA by failing to select investments that had the highest returns or were the cheapest in the market. Similarly, utilizing "revenue sharing" to compensate a plan's recordkeeper is a common practice and is neither a breach of fiduciary duty nor a prohibited transaction under ERISA.

Finally, Plaintiffs' claim that Defendants were required to use an Internal Revenue Service or Department of Labor voluntary correction program ("VCP") is not actionable because the law provides no private right of action to Plan participants for a sponsor's alleged failure to utilize the

---

[2] Incorrectly identified by Plaintiffs as the "AAA Carolinas Savings & Investment Plan."

program.

## FACTUAL BACKGROUND

This factual statement is derived from the Complaint (ECF No. 7) and publicly available documents referenced in the Complaint, or upon which Plaintiffs' claims rely.[3]

## I.  THE PLAN AND ITS SERVICE PROVIDERS.

The Plan is a 401(k) defined contribution plan sponsored by AAA Carolinas to provide retirement benefits for eligible employees. ¶¶ 19-20, 25-26.[4] Eligible employees can contribute to their Plan account. ¶¶ 20, 22, 29. On January 4, 2021, the Plan was absorbed into The Auto Club Group Tax Deferred Saving Plan, sponsored by ACG. ¶ 21.

At various times, AAA Carolinas and ACG appointed Plan fiduciaries who were responsible for selecting and monitoring Plan investments and their fees, as well as selecting and monitoring the recordkeeper and its fees. ¶ 36. In 2009 Capfinancial Partners, LLC d/b/a Captrust Financial Advisors ("Captrust") was first retained by the Plan as an investment fiduciary. ¶ 160. Captrust was retained again in 2014 to assist AAA Carolinas in selecting and monitoring Plan investments. ¶ 161. Plaintiffs do not allege that Captrust had any involvement with the Plan after 2014. Rather, in 2015, Captrust was replaced by Wells Fargo as investment advisor to the Plan. ¶ 208.

As the Plan's investment advisor, Wells Fargo was paid $27,763 in 2015, $75,227 in 2016,

---

[3] In considering a Motion to Dismiss, a court may rely on documents that are integral to and relied on in the complaint and whose authenticity the plaintiff does not challenge without converting the Motion to one for Summary Judgment. *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)); *Am. Chiropractic v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Whitesell v. Town of Morrisville*, 446 F. Supp. 2d 419, 421-22 (E.D.N.C. 2006).

[4] Citations to paragraphs in the Complaint are hereinafter identified as "¶ __." All Exhibits ("Ex.") are attached to the accompanying Declaration of René E. Thorne.

$63,422 in 2017, and $56,00 in both 2018 and 2019. ¶ 213. Wells Fargo also served as recordkeeper for the Plan. ¶ 37. As recordkeeper, Wells Fargo charged the Plan $162,844 in 2015, $138,935 in 2016, $171,607 in 2017, $163,503 in 2018, and $145,453 in 2019. ¶ 197 (chart).

## II. PLAN INVESTMENT OPTIONS.

At all relevant times,[5] Plan participants could choose from a wide range of diverse investments, including actively and passively managed mutual funds (low-cost index funds, value funds, growth funds, international funds, bond funds, and target date funds), as well as a stable value fund. Ex. 1.[6] Each investment option has an expense ratio, which is the fee charged for investing in that fund, measured as a percentage of the plan assets held in that investment. ¶ 52.

Plaintiffs allege the Plan's expense ratios were too high, but challenge expense ratios for only four of the funds in Plan, and only for 2004 through 2008 for three of the funds, and only for 2015 for the fourth fund. Specifically, Plaintiffs take issue with the expense ratios for the Allianz NFJ Dividend Value R fund from 2004 through 2008 (¶ 113); the American Beacon Small Cap Value Adv fund from 2004 through 2008 (¶ 118); the BNY Mellon S&P 500 Index Fund from 2004- 2008 (¶ 128); and the JPMorgan Smart Retirement 2030 fund for 2015. ¶ 135.

To be clear, Plaintiffs do not attack any other funds in the Plan. And – except for the JPMorgan Smart Retirement 2030 Fund in 2015 – they include *no* fee or performance data for any of the other challenged funds for the time period that falls within ERISA's six-year statute of repose, July 6, 2015 through July 6, 2021.

---

[5] Plaintiffs maintain the "Class Period is "yet to be determined," and that it will need to be "ferreted out in discovery." ¶ 14. They acknowledge, however, ERISA's six-year statute of limitations which would confine the Class Period to July 6, 2015 at the earliest, to July 6, 2021, the filing date of the original complaint. *Id.*

[6] Exhibit 1 contains the Form 5500s from 2015-2020. The forms are public records and referenced throughout the Complaint at ¶¶ 9, 23, 26, 29, 32, 34, 66, 71, 108, 111, 159, 161, 166, 193, 199, 208, 249, 270, 329.

## III. THE COMPLAINT.

Plaintiffs allege they were employed by AAA Carolinas and participated in the Plan during their employment. ¶¶ 15, 16. They do not allege when they were employed, what years they held investments in the Plan, or the funds in which they invested. Notwithstanding, Plaintiffs assert claims under ERISA Sections 409 and 502(a)(2) purportedly on behalf of a class of *all* Plan participants for an undefined period. ¶ 17.

In Count I of the Complaint, Plaintiffs contend that Defendants maintained and failed to remove expensive funds and failed to monitor service providers, resulting in overcompensation. ¶¶ 325-340. In Count II, Plaintiffs claim that the Plan did not offer a sufficient variety of investment options to allow Plaintiffs to diversify their investments. ¶¶ 343-351. In Count III, Plaintiffs allege that Defendants engaged in prohibited transactions by paying Captrust and Wells Fargo Bank excessive compensation. ¶¶ 354-359. In Count IV, Plaintiffs contend Defendants failed to follow the terms of a prototype Wells Fargo Plan, which they "assume" is the same as the actual Plan. ¶¶ 278, 368, 371.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In addition to the plausibility standard, the Court must evaluate the Complaint in the context of the applicable substantive law—here, ERISA and its fiduciary breach provisions. *Iqbal*, 556 U.S. at 678-79.

ERISA represents a careful balancing of its dual policies of "ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 424 (2014) (citation omitted). ERISA's goal of

5
Case 3:21-cv-00319-MOC-DCK   Document 20   Filed 11/02/21   Page 5 of 15

encouraging the creation of plans is effectuated through twin policies of (1) affording deference to the decision-making of plan fiduciaries and not transforming courts into *de facto* plan administrators; and (2) defraying litigation expenses that might otherwise discourage employers from offering benefit plans in the first place. *Dudenhoeffer*, 573 U.S. at 424; *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011).

To avoid "the threat of costly duty-of-prudence lawsuits," the Supreme Court has endorsed rigorous application of the 12(b)(6) pleading standard to protect plan fiduciaries from meritless, hindsight claims that second-guess fiduciary decisions. *Dudenhoeffer*, 573 U.S. at 423, 426. This rigorous application ensures that plaintiffs cannot pack complaints with incorrect data and misleading comparisons and then pursue inordinately expensive discovery and settlements. *Forman v. TriHealth, Inc.,* No. 1:19-cv-613, 2021 U.S. Dist. LEXIS 183470, at *18 (S.D. Ohio Sep. 24, 2021) (dismissing claims where Plaintiffs did offer sufficient information to permit conclusion that purported benchmarks were meaningful); *Smith v. Commonspirit Health*, No. 20-95-DLB-EBA, 2021 U.S. Dist. LEXIS 169922, at *22 (E.D. Ky. Sep. 8, 2021) (noting that "[d]istrict courts that allow complaints of this nature to proceed to discovery . . . abrogate their duty to weed out claims that lack merit as a matter of law."); *Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 U.S. Dist. LEXIS 115002, at **13-14 (N.D. Ill. July 1, 2020) (rejecting plaintiffs' request to engage in discovery to develop their claims, finding that "argument ha[d] it backwards" because the court is obligated to dismiss such speculative lawsuits); *see also Kurtz v. Vail Corp.*, No. 1:20-cv-00500-RBJ, 2021 U.S. Dist. LEXIS 1715, at *29 (D. Colo. Jan. 6, 2021) (requiring rigorous application of ERISA's prudence standards).

Here, the Complaint is replete with generalizations, conclusions, and time-barred data to obscure the absence of any plausible allegations. But to state a plausible claim for breach of
6

fiduciary duty in this context, Plaintiffs must allege more: more than legal conclusions, more than generic or inauthentic facts, and more than other, cheaper investment options or recordkeepers existed. *See Dudenhoeffer*, 573 U.S. at 425; *Iqbal*, 556 U.S. at 662. Without "more," courts cannot reasonably infer that plan fiduciaries breached their fiduciary duties. *Id.* Put plainly, the Court should view this attempt as precisely what it is: a hindsight attempt to micromanage the Plan through litigation.

## ARGUMENT

I. **PLAINTIFFS FAIL IN MULTIPLE RESPECTS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

   A. **Many of Plaintiffs' Claims Are Time-Barred.**

      1. **Plaintiffs' Fund Performance and Expense Ratios Claims are Untimely.**

Under ERISA Section 413, a plaintiff's claim must be filed within a general six-year limitations period. 29 U.S.C. § 1113. Because Section 413's limitations period begins upon "the last action which constituted a part of the breach or violation," Section 413 is considered a statute of repose. *David v. Alphin*, 704 F.3d 327, 331 (4th Cir. 2013). Accordingly, the limitations period begins to run "when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." *Id*. (citation omitted).

Like here, in *David* plaintiffs challenged the selection of, and failure to remove, certain funds in a 401(k) plan. They argued that the limitations period began to run anew each time the plan's investment committee met but did not remove or replace the challenged funds. This Court rejected plaintiffs' argument that the failure to remove the funds re-started the clock and found instead that the claims accrued when the funds were first added. *David v. Alphin*, 817 F. Supp. 2d 764, 777 (W.D.N.C., 2011). The Fourth Circuit agreed:

> [W]e find untenable Appellants' contention that their claims are timely because Appellees' failure to remove the affiliated funds at every committee meeting constituted a new "prohibited transaction," and thus, a breach of fiduciary duty. The only action that can support an alleged prohibited transaction is the initial selection of the affiliated funds, which undisputedly occurred in 1999. Thus, the district court correctly determined that the limitations period ran prior to the filing of this action in 2006.

*David*, 704 F.3d at 341.

Likewise, because plaintiffs alleged the funds at issue were imprudent at the time of their original selection, the Fourth Circuit maintained, "the claim is not truly one of a failure to remove an imprudent investment. It is, at its core, simply another challenge to the initial selection of the funds to begin with." *Id*. at 341-342. Consequently, because the addition of the funds occurred more than six years prior to the filing of the complaint, the prudence and loyalty claims were also time-barred. *Id*. at 341.[7]

So too here. As noted above, Plaintiffs allege that the Allianz NFJ Dividend Value R fund was included in the Plan in 2009, but only challenge the cost and performance in 2004, 2005, 2006, 2007, and 2008. ¶¶ 112, 113. Similarly, they allege that the American Beacon Small Cap Value Adv Fund and BNY Mellon S&P 500 Index Funds were added to the Plan in 2009 but only challenge their cost and performance in 2004, 2005, 2006, 2007, and 2008. ¶¶ 114, 115, 118, 121, 128. Finally, Defendants claim that the JPMorgan Smart Retirement 2030 fund was offered in the Plan in 2014 or 2015 but only challenge its performance and fees in 2015. ¶¶ 134-136. Like plaintiffs in *David*, Plaintiffs here allege that all four funds were unreasonably expensive and

---

[7] In *Tibble v. Edison International*, 575 U.S. 523 (2015), the Supreme Court held that a fiduciary has a continuing duty – separate and apart from the duty to exercise prudence in selecting investments at the outset – to monitor and remove imprudent trust investments. *Id.* at 525. But *David* was not overruled by *Tibble,* and Plaintiffs here do not set forth any facts to support a claim that the challenged funds underperformed or charged excessive costs during the limitations period.

underperforming, and better options were available, at the time AAA Carolinas initially selected them for inclusion in the Plan.[8] ¶¶ 113, 118, 121-124, 135.

Simply put, other than the JPMorgan fund, Plaintiffs do not allege that any of the challenged funds were added to the Plan on or after July 6, 2015 (six years prior to the filing of the original complaint). Accordingly, the reasoning in *David* applies here, albeit with greater force because the Complaint also does not include any factual allegations regarding expense ratios or performance of the challenged funds during the limitations period, with the potential exception of the JPMorgan fund during a portion of 2015. As a result, the claims in Count I related to the Allianz NFJ Dividend Value R fund, the American Beacon Small Cap Value Adv fund, or the BNY Mellon S&P 500 fund must be dismissed as time-barred, and the claims related to the JPMorgan fund are limited to performance and fees in 2015.

## 2. Plaintiffs' Claims Regarding Payments to Captrust Are Time Barred.

Plaintiffs claim Captrust was first hired by the Plan in 2009 as an investment fiduciary, and that it was hired again in 2014 to assist Defendants in selecting and monitoring trust investments. ¶¶ 160-162. Plaintiffs assert that in 2014 the Plan paid excessive compensation to Captrust, and that Captrust received a kickback when it "instructed or aided Defendants in adding" JPMorgan target date funds as an investment option. ¶¶ 255-256, 262-264. Plaintiffs concede that in 2015 Wells Fargo replaced Captrust. ¶ 208.

In Count I, Plaintiffs assert that payments to Captrust constituted a breach of fiduciary duty and, in Count III, that the payments were prohibited transactions. ¶¶ 339, 354-357. Both claims are time barred under ERISA's six-year statute of repose. As noted above, in *David*, the Fourth

---

[8] In Count IV of the Complaint, Plaintiffs contend that Defendants failed to follow the terms of the Plan documents, largely by selecting and maintaining the challenged funds. ¶¶ 366-373. Because Count IV relies on the same allegations outlined above, they are time barred for the same reasons.

Circuit expressly applied the six-year statute of repose in ERISA Section 413 to breaches of the duties of loyalty and prudence, and alleged prohibited transactions. *David*, 704 F.3d at 340-341. Because Plaintiffs do not allege that Captrust was paid any compensation by the Plan after 2014, as they relate to Captrust, both Counts I and III are time barred and must be dismissed.

    **B.    Most of Plaintiffs' Remaining Allegations Fail the Plausibility Test.**

          **1.    Payments to Wells Fargo Were Neither Imprudent nor Prohibited Transactions.**

Plaintiffs claim that the Plan used revenue sharing to compensate Wells Fargo as the recordkeeper, resulting in allegedly excessive payments, which also constituted prohibited transactions. ¶¶ 168-170, 190, 213, 255, 336, 358. Plaintiffs allege that this asset-based pay "is almost always imprudent under ERISA" (¶ 170). But numerous courts have acknowledged that revenue sharing is a common and acceptable investment industry practice that frequently inures to the benefit of ERISA plans. *See, e.g. Karolyn v. Novant Health, Inc.*, 131 F. Supp. 3d 470, 479 (M.D.N.C. 2015).

Next, Plaintiffs purport to state the yearly recordkeeping fees the Plan paid from 2009 through 2019. ¶ 197. They also purport to calculate the recordkeeping fees paid per participant from 2011 through 2019.[9] ¶¶ 187-188. However, Plaintiffs provide no source for the amounts paid, or how they calculated the fees paid per participant. ¶¶ 169, 173. Nor do Plaintiffs' numbers appear to align with the Form 5500s filed by the Plan, which provide various fees paid by the Plan and Plan participant numbers and types during each year. Ex. 1.

As Plan participants, Plaintiffs have ample access to information about their 401(k) Plan's investment options and costs. *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,

---

[9] As described above, any data predating July 6, 2015 is entirely irrelevant because any claim based on that information is time barred.

712 F.3d 705, 720 (2d Cir. 2013); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822-23 (8th Cir. 2018); 29 C.F.R. § 2550.404a-5(c)-(d) (requiring quarterly plan statements and annual fee disclosures); 29 C.F.R. § 2550.404a-5(d)(4) (requiring the plan to furnish prospectuses upon request); ERISA § 104(a) (requiring plans to file Form 5500s annually with the Department of Labor). Accordingly, courts must dismiss complaints that lack or misreport factual information about the Plan. *See Morgan Stanley*, 712 F.3d at 723 ("imprecise pleading is particularly inappropriate [in the ERISA context], where the plaintiffs necessarily have access, without discovery, to plan documents and reports that provide specific information from which to fashion a suitable complaint"); *Meiners*, 898 F.3d at 822-23.

This is especially true where documents the Court may consider at the pleadings stage directly contradict plaintiffs' allegations, as is the case here. *Marks v. Trader Joe's Co.*, No. 19-cv-10942, 2020 U.S. Dist. LEXIS 78642, at *16-18 (C.D. Cal. Apr. 24, 2020) (dismissing claim where plaintiffs "guessed" the plan's fees even though they possessed documents showing the same); *White v. Chevron Corp.*, No. 16-cv-0793, 2017 U.S. Dist. LEXIS 83474, at *56 (N.D. Cal. May 31, 2017) (ignoring fee allegations where the plan's Form 5500 confirmed that plaintiffs' estimates were inflated), *aff'd*, 752 F. App'x 435 (9th Cir. 2018); *Wilcox v. Georgetown Univ.*, No. 18-cv-422 (RMC), 2019 U.S. Dist. LEXIS 3082, at *30-31 (D.D.C. Jan. 8, 2019) (dismissing claim where prospectuses contradicted plaintiffs' allegations).

In this matter, Plaintiffs regularly received and have instant access to documents that expressly disclose the facts needed to support their claims. However, instead of relying on these documents, they cherry-pick and or invent their own data and metrics, likely because the Plan's

true data demonstrates prudent fiduciary conduct.[10]  As set forth above, however, innuendo and speculation are insufficient to meet the rigorous standard endorsed by the Supreme Court in *Duddenhoefer*.  For these additional reasons, Counts I and III relating to Wells Fargo and Captrust must be dismissed.

> **2. Plaintiffs Fail to State a Claim for Defendants' Alleged Failure to File for Voluntary Correction Programs.**

Although not set forth as a separate count, throughout their Complaint, Plaintiffs allege that Defendants failed to follow an unidentified voluntary correction program ("VCP") under the Department of Labor or Internal Revenue Service to correct the allegedly improper inclusion of the JPMorgan Smart Retirement target date funds and the allegedly excessive payment to Captrust in 2014.  ¶¶ 145-150, 269-270, 281, 282, 368.  Plaintiffs allege that Defendants were required to follow the VCP "to maintain tax-exempt status" (¶ 149), and they claim that under the VCP "Defendants must [a]pply [a] reasonable correction method that would place affected participants in the position they would've been in if there were no operation plan defects.'"  ¶ 149 (internal quotation marks omitted).

Although they provide no source for the quoted language, presumably Plaintiffs are relying on Section 401 of the Internal Revenue Code ("IRC"), 26 U.S.C. § 401, which governs tax treatment and qualifications of retirement plans, and Rev. Proc. 2019-19, which sets forth the VCP purpose and process for voluntarily self-correcting errors which might otherwise disqualify a plan from preferential tax treatment.  I.R.C. Rev. Proc. 2019-19 I.R.B. 108, 2019 IRB LEXIS 144, at

---

[10] Plaintiffs also allege that the Plan paid Wells Fargo $27,763 in 2015, $75,227 in 2016, $63,422 in 2017, and $56,000 in 2018 and 2019 for advisory services.  ¶ 213.  To the extent Plaintiffs challenge these payments, their claims fail.  On its face, this data shows that AAA Carolinas actively monitored and took measures to reduce costs throughout the Class Period.  Accordingly, any claim related to Wells Fargo's advisory fees should be dismissed.

*1

Plaintiffs' claim fails for two reasons. First, the I.R.C. provides no private right of action to enforce its provisions, and Plaintiffs cannot use the VCP to bootstrap a right of action. *See Chavis v. Plumbers & Steamfitters Local 486 Pension Plan*, No. ELH-17-2729, 2020 U.S. Dist. LEXIS 54838, at *90, (D. Md. Mar. 27, 2020) (rejecting plaintiffs' claim based on a failure to utilize the VCP); *Hollowell v. Cincinnati Ventilating Co.*, 711 F. Supp. 2d 751, 770-71 (E.D. Ky. 2010) (dismissing an ERISA fiduciary breach claim alleging that plan fiduciaries violated the I.R.C.); *Stamper v. Total Petroleum, Inc. Ret. Plan*, 188 F.3d 1233, 1237-39 (10th Cir. 1999) (I.R.C. § 401 does not provide ERISA relief); *Reklau v. Merch. Nat'l Corp.*, 808 F.2d 628, 631 (7th Cir. 1986) ("We . . . refuse to read § 401(a) of the I.R.C. as applicable to ERISA.").

Second, Plaintiffs do not allege that the Plan lost its tax-exempt status or incurred fees or sanctions by the IRS for any uncorrected errors. In other words, Defendants' alleged failure to self-correct did not result in the harm that the VCP is intended to prevent. Accordingly, Plaintiffs' allegation that they suffered harm from this "failure" is untrue on its face, and Plaintiffs' allegations that the Plan failed to follow the VCP must be dismissed.

## CONCLUSION

Plaintiffs' claim for breach of fiduciary duty against Defendants for maintaining high cost, underperforming funds is time-barred, as are Plaintiffs' claims alleging a prohibited transaction based on payments to Captrust and Defendants' alleged failure to follow plan documents. Plaintiffs' allegations regarding Defendants' failure to utilize a voluntary corrections program are insufficient to state a plausible claim for relief. These claims should be dismissed with prejudice.

Date: November 2, 2021                    Respectfully submitted,

                                          */s/ René E. Thorne*
                                          René E. Thorne*

Rene.Thorne@jacksonlewis.com
Charles F. Seemann III*
Charles.Seemann@jacksonlewis.com
Jackson Lewis P.C.
650 Poydras Street, Suite 1900
New Orleans, LA 70130
Telephone: (504) 208-1755
Facsimile: (504) 208-1759

H. Bernard Tisdale III
N.C. State Bar No. 23980
Bernard.Tisdale@jacksonlewis.com
Jackson Lewis P.C.
200 South College Street
Suite 1550, 15th Floor
Charlotte, NC 28202
Telephone: (980) 465 7237
Facsimile: (704) 333-7764

*Admitted Pro Hac Vice

**COUNSEL FOR DEFENDANTS**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Case Action No. 3:21-cv-319-MOC-DCK

| | |
|---|---|
| WES JOHNSON, and TAMEKIA BOTTOMS, individually and on behalf of all other similarly situated, The AAA Carolinas Savings & Investment Plan and The Auto Club Group Tax Deferred Savings Plan,<br><br>Plaintiffs,<br><br>v.<br><br>CAROLINA MOTOR CLUB, INC. d/b/a AAA Carolinas and THE AUTO CLUB GROUP, INC.,<br><br>Defendants. | **CERTIFICATE OF SERVICE** |

The undersigned certifies that on November 2, 2021, the foregoing *MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' AMENDED COMPLAINT* was electronically filed with the Clerk of the Court, using the Court's CM/ECF electronic service system, which will send notification of such filing as follows:

ANDREW L. FITZGERALD
N.C. State Bar No. 31522
andy@fitzgeraldlitigation.com
FITZGERALD LITIGATION
119 Brookstown Avenue, Suite 402
Winston-Salem, NC 27101

*Attorney for Plaintiff*

                                            */s/ René E. Thorne*
                                            René E. Thorne*
                                            Rene.Thorne@jacksonlewis.com
                                            Jackson Lewis P.C.
                                            650 Poydras Street, Suite 1900
                                            New Orleans, LA  70130
                                            Telephone: (504) 208-1755
                                            Facsimile:  (504) 208-1759
                                            *Admitted Pro Hac Vice
                                            **COUNSEL FOR DEFENDANTS**