Exhibit 1

No. 13-550

# In the Supreme Court of the United States

---

GLENN TIBBLE, ET AL., PETITIONERS

*v.*

EDISON INTERNATIONAL, ET AL.

---

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

---

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

---

M. PATRICIA SMITH
  *Solicitor of Labor*
G. WILLIAM SCOTT
  *Associate Solicitor*
NATHANIEL I. SPILLER
  *Counsel for Appellate and
  Special Litigation*
STACEY E. ELIAS
DAVID M. ELLIS
  *Attorneys
  Department of Labor
  Washington, D.C. 20210*

DONALD B. VERRILLI, JR.
  *Solicitor General
    Counsel of Record*
EDWIN S. KNEEDLER
  *Deputy Solicitor General*
NICOLE A. SAHARSKY
  *Assistant to the Solicitor
    General
  Department of Justice
  Washington, D.C. 20530-0001
  SupremeCtBriefs@usdoj.gov
  (202) 514-2217*

## QUESTIONS PRESENTED

The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1001 *et seq.*, imposes duties on fiduciaries of an employee benefit plan to administer the plan prudently, for the exclusive benefit of the participants, and in accordance with the provisions of the plan. 29 U.S.C. 1104(a). Plan participants and beneficiaries may sue on behalf of the plan to remedy a breach of these fiduciary duties. 29 U.S.C. 1109, 1132(a)(2). A claim for breach of fiduciary duty must be brought within six years of "(A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation," 29 U.S.C. 1113(1), unless the plaintiff had actual knowledge of the breach, 29 U.S.C. 1113(2), or there was fraud or concealment of the breach, 29 U.S.C. 1113.

The questions presented are:

1. Whether a claim that ERISA plan fiduciaries breached their duty of prudence by offering higher-cost retail-class mutual funds to plan participants, even though identical lower-cost institutional-class mutual funds were available, is barred by 29 U.S.C. 1113(1) when fiduciaries initially chose the higher-cost mutual funds as plan investments more than six years before the claim was filed.

2. Whether, in the context of a claim that plan fiduciaries breached their duty to administer an ERISA plan in accordance with plan terms, the fiduciaries' interpretation of the plan is reviewed for an abuse of discretion or de novo when the plan expressly gives the fiduciaries discretion to interpret the plan.

(I)

# TABLE OF CONTENTS

Page

Statement..............................................................................1
Discussion ............................................................................7
   A.  The statute-of-limitations question warrants
       this Court's review ..................................................8
   B.  The standard-of-review question does not
       warrant this Court's review.............................16
Conclusion.........................................................................24

# TABLE OF AUTHORITIES

Cases:

*Central States, Se. & Sw. Areas Pension Fund*
   v. *Central Trans. Inc.*, 472 U.S. 559 (1985).......................18
*Conkright* v. *Frommert*, 559 U.S. 506 (2010)........................3
*David* v. *Alphin*, 704 F.3d 327 (4th Cir. 2013)....................14
*Fifth Third Bancorp* v. *Dudenhoeffer*, 134 S. Ct. 2459
   (2014) ................................................................................9, 22
*Firestone Tire & Rubber Co.* v. *Bruch*, 489 U.S. 101
   (1989) ........................................................................2, 17, 19
*Fuller* v. *SunTrust Banks, Inc.*, 744 F.3d 685
   (11th Cir. 2014).....................................................................14
*Ganton Techs., Inc.* v. *National Indus. Grp. Pension*
   *Plan*, 76 F.3d 462 (2d Cir. 1996) ...................................21, 22
*Hunter* v. *Caliber Sys., Inc.*, 220 F.3d 702 (6th Cir.
   2000) .................................................................................22, 23
*John Blair Commc'ns, Inc. Profit Sharing Plan*
   v. *Telemundo Grp., Inc. Profit Sharing Plan*,
   26 F.3d 360 (2d Cir. 1994)....................................................22
*Martin* v. *Consultants & Adm'rs, Inc.*, 966 F.2d 1078
   (7th Cir. 1992)..................................................................8, 15
*Metropolitan Life Ins. Co.* v. *Glenn*, 554 U.S. 105
   (2008) ...............................................................................2, 19

(III)

Cases—Continued:                                                 Page

*Moench* v. *Robertson*, 62 F.3d 553 (3d Cir. 1995),
    cert. denied, 516 U.S. 1115 (1996)......................................22

*Morrissey* v. *Curran*, 567 F.2d 546 (2d Cir. 1977)..............15

*Phillips* v. *Alaska Hotel & Rest. Emps. Pension
    Fund*, 944 F.2d 509 (9th Cir. 1991), cert. denied,
    504 U.S. 911 (1992) ...........................................................6, 13

*Struble* v. *New Jersey Brewery Emps.' Welfare
    Trust Fund*, 732 F.2d 325 (3d Cir. 1984)..........................22

*Tussey* v. *ABB, Inc.*:
    746 F.3d 327 (8th Cir. 2014), petition for cert.
        pending, No. 14-130 (filed Aug. 5, 2014).............22, 23
    No. 2:06-cv-4305, 2012 WL 1113291 (W.D. Mo.
        Mar. 31, 2012)................................................................22

*Unisys Sav. Plan Litig., In re*, 173 F.3d 145
    (3d Cir.), cert. denied, 528 U.S. 950 (1999)......................22

*Varity Corp.* v. *Howe*, 516 U.S. 489 (1996).............................1

Statutes and regulation:

    Employee Retirement Income Security Act of 1974,
        29 U.S.C. 1001 *et seq.* ...............................................1
        29 U.S.C. 1001(b)............................................................1
        29 U.S.C. 1002(34).........................................................3
        29 U.S.C. 1054(g)..........................................................22
        29 U.S.C. 1104(a)(1) .......................................................1
        29 U.S.C. 1104(a)(1)(A)..............................................2, 22
        29 U.S.C. 1104(a)(1)(A)-(C) ...........................................18
        29 U.S.C. 1104(a)(1)(B)....................................2, 7, 9, 22
        29 U.S.C. 1104(a)(1)(D)...........................................*passim*
        29 U.S.C. 1105(a)(3) ......................................................10
        29 U.S.C. 1109................................................................2
        29 U.S.C. 1113................................................................8

V

Statutes and regulation—Continued:          Page

29 U.S.C. 1113(1) .............................................*passim*
29 U.S.C. 1113(1)(A) ............................................6, 11, 12
29 U.S.C. 1113(1)(A)-(B)...........................................11
29 U.S.C. 1113(1)(B) ................................................10, 11
29 U.S.C. 1113(2) ......................................................13
29 U.S.C. 1132(a)(1)(B).............................................17
29 U.S.C. 1132(a)(2) .................................................2
29 U.S.C. 1133 ..........................................................19
29 C.F.R. 2560.503-l ..............................................19

Miscellaneous:

George G. Bogert et al., *The Law of Trusts and*
    *Trustees* (3d ed. 2009) .........................................10
Restatement (Second) of Trusts (1959)...................10, 17, 19
Restatement (Third) of Trusts (2007)................................10
Austin W. Scott et al., *Scott and Ascher on Trusts*
    (5th ed. 2007) ......................................................18
United States Dep't of Labor, Fact Sheet,
    http://www.dol.gov/ebsa/pdf/fsinvestmentadvicefina
    l.pdf (2011) ...........................................................16

# In the Supreme Court of the United States

No. 13-550

GLENN TIBBLE, ET AL., PETITIONERS

*v.*

EDISON INTERNATIONAL, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

This brief is submitted in response to the order of this Court inviting the Solicitor General to express the views of the United States. In the view of the United States, the petition for a writ of certiorari should be granted, limited to the first question presented.

## STATEMENT

1. The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1001 *et seq.*, "protect[s] * * * the interests of participants in employee benefit plans and their beneficiaries" by "establishing standards of conduct, responsibility, and obligation for fiduciaries of [those] plans." 29 U.S.C. 1001(b). ERISA imposes the trust-law duties of loyalty and prudence on plan fiduciaries. 29 U.S.C. 1104(a)(1); see *Varity Corp.* v. *Howe*, 516 U.S. 489, 496 (1996). Thus, plan fiduciaries must act "solely in the interest of the participants and beneficiaries" and "for the exclusive

(1)

purpose" of providing benefits and defraying plan expenses. 29 U.S.C. 1104(a)(1)(A). Plan fiduciaries also must discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters" would use. 29 U.S.C. 1104(a)(1)(B). Further, plan fiduciaries must act "in accordance with the documents and instruments governing the plan," so long as they are consistent with ERISA. 29 U.S.C. 1104(a)(1)(D).

A plan participant or beneficiary may sue on behalf of the plan to remedy a breach of fiduciary duty, 29 U.S.C. 1132(a)(2), and fiduciaries are personally liable for such breaches, 29 U.S.C. 1109. With exceptions not applicable here (see note 3, *infra*), an action for breach of fiduciary duty must be brought within six years of "(A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C. 1113(1).

In *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U.S. 101 (1989), this Court held that review of a plan administrator's denial of ERISA plan benefits is de novo unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case abuse-of-discretion review applies. *Id.* at 115. The Court added that if the plan administrator "is operating under a conflict of interest," that conflict should be "weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Ibid.* (citation and internal quotation marks omitted; brackets in original). The Court reaffirmed that standard in *Met-*

*ropolitan Life Insurance Co.* v. *Glenn*, 554 U.S. 105 (2008), and *Conkright* v. *Frommert*, 559 U.S. 506 (2010).

2. Respondent Edison International is a holding company for electric utilities and energy interests (collectively, Edison). Pet. App. 13. Petitioners are participants in the Edison 401(k) plan (the Plan). *Id.* at 12-13, 70. The Plan is a multi-billion-dollar ERISA plan serving approximately 20,000 employees. *Id.* at 13, 105. Respondent Southern California Edison Benefits Committee (Benefits Committee) is the plan administrator, and respondents Edison International Trust Investment Committee and Trust Investment Subcommittee (collectively, the Investment Committees) choose plan investments. *Id.* at 169-170.

a. The Plan is a defined-contribution plan, meaning that participants are entitled to the value of their own investment accounts, rather than any specific benefit amount. Pet. App. 13; see 29 U.S.C. 1002(34). The value of each participant's account depends upon the participant's and employer's contributions and the investments' market performance, minus expenses. Pet. App. 13.

Participants choose their investments from a menu of funds selected by the Investment Committees. Pet. App. 72-73. The Investment Committees meet quarterly to review plan investments, and at those meetings, they consider whether to remove, replace, or add funds. *Id.* at 74-75; see Defs.' Corrected Statement of Uncontroverted Facts 16 (¶ 65) (D. Ct. Doc. 264) (Statement of Uncontroverted Facts).

Since 1999, plan participants could choose from a variety of funds, including approximately 40 mutual funds. Pet. App. 13-14. For six mutual funds, the

Investment Committees selected retail-class funds as plan investments, even though otherwise identical institutional-class funds that charged lower fees were available. *Id.* at 14, 83-84. The mutual funds also engaged in a practice called "revenue sharing," under which a portion of the fees collected by the mutual funds from investors was distributed to service providers, such as the Plan's recordkeeper. *Id.* at 14, 80. The revenue-sharing practice allowed Edison to pay less to the recordkeeper for its services to the Plan because the recordkeeper credited Edison for the amounts it received from the funds. *Id.* at 36.

Two plan terms are at issue here. The first provides that "[t]he cost of the administration of the Plan will be paid by the Company." Pet. App. 36.[1] The second gives the Benefits Committee "full discretion to construe and interpret the terms and provisions of this Plan." *Id.* at 211.

b. Petitioners sued Edison, the Benefits Committee, the Investment Committees, and others (respondents in this Court), alleging breach of fiduciary duties. Pet. App. 65-67. As relevant here, petitioners contended that respondents (1) breached their duty of prudence by offering higher-fee retail-class mutual funds as plan investments when identical lower-fee institutional-class funds were available, and (2) breached their duty of administering the Plan in accordance with its terms by using the revenue-sharing arrangement to reduce Edison's costs, which petitioners contended effectively shifted those costs to participants. *Id.* at 65-68.

---

[1] The Plan was amended in 2006 to state that the company must pay plan administration costs, "net of any adjustments by service providers." Pet. App. 37 (emphasis omitted).

c. The district court granted partial summary judgment to respondents. Pet. App. 166-268. The court held that ERISA's six-year statute of limitations barred claims arising from respondents' retention of mutual funds that were first selected as plan investments more than six years before the complaint was filed, on the ground that "[t]here is no 'continuing violation' theory" under ERISA. *Id.* at 180, 262-263. The court also rejected petitioners' claim that the revenue-sharing arrangement violated the plan term requiring the company to pay the cost of plan administration. *Id.* at 209-219. The court reviewed respondents' interpretation of that plan term for abuse of discretion because the Plan "unambiguously gives the Benefits Committee discretion to interpret the language of the Plan." *Id.* at 211. The court determined that respondents' interpretation of "cost of administration of the Plan" to mean net costs was not an abuse of discretion, *id.* at 213, and indeed "was correct" under de novo review, *id.* at 215-217.[2]

d. After a bench trial, the district court held that respondents breached their duty of prudence by offering retail-class mutual funds as plan investments when identical lower-cost institutional funds were available. Pet. App. 68-69, 128-142. But the court limited that holding to the three mutual funds that were first offered to plan participants within the six-year limitations period, *id.* at 128-142, because it had already held that ERISA's statute of limitations barred petitioners' claims with respect to the other

---

[2] The district court employed de novo review because the Plan did not include language granting the Benefits Committee discretion to interpret the Plan during part of the limitations period. See Pet. App. 214.

three funds. The court allowed petitioners to argue that certain changed circumstances required removal of the latter three funds, but then rejected that argument. *Id.* at 142-150.

3. The court of appeals affirmed. Pet. App. 1-64. The court assessed the timeliness of petitioners' claim about retaining the imprudent investments under 29 U.S.C. 1113(1)(A), the provision that requires suit to be brought within six years of the "last action" constituting the fiduciary breach. Pet. App. 17. The court reasoned that "the act of designating an investment for inclusion starts the six-year period under [Section 1113(1)(A)] for claims asserting imprudence in the design of the plan menu," and so such a claim must be filed within six years of the initial designation. *Id.* at 17-18. The court also stated that it had previously rejected a "continuing violation theory" for ERISA claims. *Id.* at 17 (citing *Phillips* v. *Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991), cert. denied, 504 U.S. 911 (1992)).

The court then concluded that abuse-of-discretion review applies to petitioners' claim that respondents' revenue-sharing arrangement violated plan terms. Pet. App. 37-43. The court stated that "when the plan grants interpretive authority to its administrator," "a deferential abuse of discretion standard applies to the administrator's determinations," including when the claim is an alleged failure to comply with plan terms. *Id.* at 38. In the court's view, such deferential review is consistent with principles of trust law, fosters uniformity in plan interpretation, and balances the need to protect plan participants and the desire to encourage employers to offer ERISA plans. *Id.* at 38, 41-43.

Appling that standard, the court rejected petitioners' revenue-sharing claim. *Id.* at 43-45.

### DISCUSSION

Petitioners first seek review (Pet. 16-26) of the question whether 29 U.S.C. 1113(1) bars claims that fiduciaries violated their duty of prudence under 29 U.S.C 1104(a)(1)(B) by offering imprudent investments as part of an ERISA plan, when the investments were first selected more than six years before the plaintiff filed suit. The court of appeals erred in finding such claims time-barred. ERISA imposes a continuing duty of prudence on plan fiduciaries, and respondents breached that duty throughout the limitations period by continuing to offer higher-cost investment options when identical lower-cost options were available. The court of appeals' decision conflicts with the decisions of other courts of appeals, and the statute-of-limitations issue is an important one. The Court therefore should grant certiorari on that question.

Petitioners also seek review (Pet. 26-38) of the question whether abuse-of-discretion review applies to a claim that a plan administrator that has been given discretionary interpretive authority violated its duty to administer the Plan in accordance with its terms, as required by 29 U.S.C. 1104(a)(1)(D). The court of appeals correctly determined that abuse-of-discretion review applies in these circumstances, although it failed to consider several factors relevant to such review. This Court should deny review of that ruling. The question was only minimally briefed below; the courts of appeals do not disagree on that question with respect to Section 1104(a)(1)(D) claims; and resolution

of that question may not affect the outcome of this case.

### A. The Statute-Of-Limitations Question Warrants This Court's Review

1. Section 1113 of Title 29 of the United States Code provides that "[n]o action may be commenced" with respect to "a fiduciary's breach of any responsibility, duty, or obligation under" ERISA after six years from "(A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C. 1113(1). A three-year limitations period applies if the plaintiff had "actual knowledge of the breach or violation," and a six-year discovery rule applies in "case[s] of fraud or concealment." 29 U.S.C. 1113. Neither of those special rules applies here.[3]

The court of appeals erred in concluding that Section 1113(1) bars petitioners' claims that respondents breached their duty of prudence by offering higher-cost retail-class mutual funds, rather than identical lower-cost institutional-class funds, because the higher-cost funds were first selected as plan investments before the limitations period. Pet. App. 16-19. Plan fiduciaries have a "continuing fiduciary duty" to "review plan investments and eliminate imprudent ones." *Martin* v. *Consultants & Adm'rs, Inc.*, 966

---

[3] Petitioners sought to invoke the special rule for fraud or concealment; the district court rejected that argument, Pet. App. 179-181, and petitioners did not renew it on appeal. Respondents argued that the shortened limitations period should apply because petitioners had actual knowledge of the breach; the district court and court of appeals rejected that argument, *id.* at 19-21, 181, and respondents did not cross-petition on that issue.

F.2d 1078, 1087-1088 (7th Cir. 1992). A fiduciary breaches that duty when it fails to monitor and periodically evaluate the performance of and fees charged by plan investments, fails to investigate alternative investment options, and fails to remove funds that shortchange participants by charging excessive fees. ERISA requires fiduciaries to use "the care, skill, prudence, and diligence" that a prudent person would use in managing similar investments in like circumstances. 29 U.S.C. 1104(a)(1)(B). Because a defined-contribution plan generally "seeks * * * to maximize retirement savings for participants," *Fifth Third Bancorp* v. *Dudenhoeffer*, 134 S. Ct. 2459, 2467-2468 (2014), no prudent fiduciary would pay fees that were higher than necessary. And any prudent ERISA fiduciary would continue to assess the performance and costs of plan investments after the initial choice is made.

The record reflects that sensible understanding of fiduciary duties. Here, the Investment Committees not only chose the initial funds to offer to plan participants, but they also were responsible for ongoing monitoring and maintenance of plan investments, and they met quarterly to fulfill that responsibility. Pet. App. 72; Statement of Uncontroverted Facts 16 (¶ 65); see Pet. 3. The district court, sustained by the court of appeals, found that the Investment Committees "failed to investigate the possibility of institutional-share class alternatives" to the retail-class funds, even though a prudent investor "would have reviewed all available share classes and the relative costs of each." Pet. App. 61, 63; see *id.* at 85-92.

Petitioners' claim that respondents breached their duty of prudence is not untimely simply because re-

spondents first offered the funds more than six years before this suit was filed. Plan participants may bring suit for any breaches of fiduciary duty within that six-year period—regardless of whether they challenged the first breach of that type. Fiduciaries have a continuing duty to manage plan investments prudently, and a prior failure to do so does not excuse similar failures within the limitations period. It does not matter if a different fiduciary initially chose the investments, because the new fiduciary has a duty to cure breaches by a co-fiduciary. 29 U.S.C. 1105(a)(3). And because ERISA expressly authorizes suits for both affirmative actions and omissions, a plaintiff may sue based on retention of imprudent investments, even if the fiduciary took no affirmative steps to renew those investments. See 29 U.S.C. 1113(1). In the case of an omission, so long as the "latest date on which the fiduciary could have cured the breach or violation" is within six years of the suit, the claim is timely. 29 U.S.C. 1113(1)(B).

Permitting plaintiffs to sue for retention of imprudent investments is consistent with the law of trusts. A trustee generally has a duty to examine and review trust investments, both when the trustee first takes office and periodically throughout the life of the trusteeship, and to sell imprudent trust investments. See, *e.g.*, George G. Bogert et al., *The Law of Trusts and Trustees* §§ 684-685, at 144-171 (3d ed. 2009); Restatement (Third) of Trusts § 90 cmt. b, at 294-296 (2007); Restatement (Second) of Trusts § 230, at 544-550 (1959). The trustee's duties include the duty to divest investments that were appropriate when first made but subsequently have become inappropriate. See Restatement (Second) of Trusts § 231, at 550-555.

Accordingly, both under ERISA and trust law, fiduciaries have an ongoing duty of prudence.

2. The court of appeals found petitioners' claims untimely by focusing on 29 U.S.C. 1113(1)(A) and concluding that the "last action which constituted a part of the breach or violation" occurred when the Investment Committees made the initial selection of plan investments. Pet. App. 17. That analysis rests on a misunderstanding of petitioners' claim. Petitioners sought to recover "losses caused to the Plan * * * within the six years preceding commencement of their action" by respondents' "failure" to "switch[] from retail to institutional class shares." Pet. C.A. Br. 16 (citation and internal quotation marks omitted). Petitioners expressly argued that respondents violated their fiduciary duties *within* the limitations period through both actions constituting a breach and omissions that failed to cure prior breaches, and they invoked both parts of Section 1113(1). *Ibid.* ("[T]he 'last action which constituted a part of the breach'—using retail class shares—occurred within six years and the 'latest date on which the fiduciary could have cured the breach'—replacing retail with institutional shares—also occurred within six years." (quoting 29 U.S.C. 1113(1)(A)-(B)); see Second Am. Compl. ¶ 73 (alleging that respondents breached their fiduciary duties by "subjecting the Plan and its participants to the high costs of retail/publicly-traded mutual funds and failing to provide investment options with significantly lower costs"). Petitioners' arguments before this Court similarly involve both "acts of commission and omission." Pet. 24; see Pet. i, 11, 17-20.

At a minimum, petitioners' claim was timely under 29 U.S.C. 1113(1)(B)—the provision addressing

omissions—because respondents had a duty to prudently manage investments during the limitations period but failed to do so by not investigating whether lower-cost institutional-class funds were available and by switching to such funds. Whether petitioners' claim also was timely under 29 U.S.C. 1113(1)(A) depends on the particular affirmative actions asserted to be fiduciary breaches. The Investment Committees met quarterly, and it is not clear (from the unsealed record) what (if any) actions they took at those meetings to retain initial investments. The courts below did not address that factual question because they barred petitioners' claims categorically. It was error to bar petitioners' claims under Section 1113(1)(A) without considering whether respondents took affirmative actions within the limitations period to renew the investments.[4]

The court of appeals also held that petitioners' claims were untimely on the ground that a "continuing violation theory" is invalid under ERISA. Pet. App. 17. But petitioners do not argue that there was a "continuing violation," in the sense of one violation starting on the date of the initial selection of investments that permits a plaintiff to obtain damages reaching back to that date. Instead, they contend that respondents breached a continuing *duty* of prudence during the limitations period by failing to re-

_____

[4] The court of appeals also was wrong to allow petitioners to challenge retention of the higher-cost funds only if they demonstrated "changed circumstances engendering a new breach." Pet. App. 19; see *id*. at 142-150. Respondents have an ongoing duty of prudence, and that duty requires them to periodically assess whether investments remain prudent—regardless of whether any external event should have prompted a review.

search fund options and offer available lower-cost institutional-class investments. Second Am. Compl. ¶¶ 49, 69-78. The decision upon which the court of appeals relied—*Phillips* v. *Alaska Hotel & Restaurant Employees Pension Fund*, 944 F.2d 509 (9th Cir. 1991), cert. denied, 504 U.S. 911 (1992)—did not address the timeliness of a claim for failure to discharge fiduciary duties under Section 1113(1). Instead, the court there addressed the shortened limitations period applicable when a plaintiff had actual knowledge of a fiduciary breach, and its holding was based on the materially different language of that provision, which refers to the "earliest date" the plaintiff had knowledge, rather than the "last action" constituting a breach or the "latest date" when the breach could have been cured. See 944 F.2d at 520; compare 29 U.S.C. 1113(2) with 29 U.S.C. 1113(1).

The court of appeals' rule effectively exempts plan fiduciaries from important ongoing fiduciary duties concerning investment options first offered more than six years earlier and fails to protect plan participants' retirement savings. A participant who invested in the Plan more than six years after the initial investment decision could never sue, even if the investment was an obviously imprudent one. And a person who became a fiduciary within the limitations period would be immunized from liability even if she never reviewed the investments. Under the court of appeals' rule, fiduciaries would have no incentive to monitor and update plan investments, and they could retain imprudent investment options forever (absent changed circumstances) once the investment options have been available for more than six years.

3. The circuits are in disagreement on the first question presented. Like the Ninth Circuit, the Fourth Circuit has held that the statute of limitations bars a claim that plan fiduciaries breached their duty of prudence "by failing to remove or replace" imprudent funds in an ERISA 401(k) plan if the funds were initially selected before the limitations period. See *David* v. *Alphin*, 704 F.3d 327, 331-332, 341 (2013). The Fourth Circuit reasoned that in the absence of a "material change in circumstances," the claim was "simply another challenge to the initial selection of the funds." *Id.* at 341.[5]

The Eleventh Circuit also has held that Section 1113(1) bars a claim for breach of fiduciary duty based on the failure to remove imprudent funds from an ERISA 401(k) plan when the funds were first selected before the limitations period. See *Fuller* v. *Suntrust Banks, Inc.*, 744 F.3d 685, 700-702 (2014). Relying on *David* and the court of appeals' decision in this case, the Eleventh Circuit concluded that the fiduciaries' "continued failure to heed warnings of the funds' low performance and high fees or to seek out such information" is not "a distinct, cognizable breach separate from the alleged breach that occurred at selection." *Id.* at 701.[6]

---

[5] The *David* court stated that it "d[id] not decide whether ERISA fiduciaries have an ongoing duty to remove imprudent investments," but that statement is difficult to reconcile with the court's holding that the plaintiffs were limited to a claim challenging "the initial selection of the funds" and could not bring a claim based on imprudent retention of the funds. 704 F.3d at 341.

[6] Respondents cite (Br. in Opp. 7-8) a number of other decisions that they say reject a "continuing violation theory," but none of those decisions addressed the timeliness of a fiduciary-breach claim under Section 1113(1).

In contrast, the Second and Seventh Circuits have recognized that ERISA imposes on fiduciaries an ongoing duty to manage plan assets prudently, including a duty to remove previously-chosen plan investments if it is not prudent to maintain them. In *Martin* v. *Consultants & Administrators, Inc., supra*, the Seventh Circuit held that a claim that plan trustees violated their fiduciary duties by renewing an imprudent contract was timely under 29 U.S.C. 1113(1), even though the contract was first awarded before the limitations period, because "the trustees are under a continuing fiduciary duty pursuant to ERISA." 966 F.2d at 1087-1088 & n.10. The court also found timely a claim that the trustees failed to monitor a service provider's performance, even though the provider was first engaged before the limitations period, because ERISA imposes a "continuing fiduciary duty" and so a "past violation generally should not be held to preclude a suit for a repeated or continued violation." *Id.* at 1089.

Similarly, in *Morrissey* v. *Curran*, 567 F.2d 546 (1977), the Second Circuit reversed the dismissal of a complaint that plan fiduciaries breached their fiduciary duties by failing to remove imprudent investments from an ERISA plan. *Id.* at 548-549 & n.9. The court rejected the argument that the fiduciaries were immune from liability because the original investment decision was made before ERISA was enacted. *Id.* at 548. Although *Morrissey* is potentially distinguishable from the decision below because the defendants' objection was that the courts lacked jurisdiction over the claim because it accrued before ERISA's effective date (not a statute-of-limitations bar), the central question in *Morrissey* was the same as in this case—

whether participants may sue for an ongoing breach of the duty of prudence when they cannot challenge the initial choice of the imprudent investment.

The disagreement in the circuits warrants this Court's review. As of 2011, more than 60 million people invested their retirement savings in employer-sponsored 401(k) plans, which held $2.2 trillion in assets. United States Dep't of Labor, Fact Sheet, http://www.dol.gov/ebsa/pdf/fsinvestmentadvicefinal.pdf (2011). The court of appeals' holding undermines the security and integrity of those funds by effectively exempting ERISA fiduciaries from their statutorily-mandated, ongoing duty of prudence simply because they first committed a similar violation more than six years earlier. The Court therefore should grant certiorari on the first question presented.

### B. The Standard-Of-Review Question Does Not Warrant This Court's Review

An ERISA fiduciary must discharge his duties "in accordance with the documents and instruments governing the plan," so long as they are consistent with ERISA. 29 U.S.C. 1104(a)(1)(D). Petitioners contend (Pet. 10) that respondents violated that requirement because the Plan provided that "[t]he cost of the administration of the Plan will be paid by the Company," Pet. App. 36, while under the revenue-sharing arrangement, plan participants paid some of those costs. The court of appeals determined that abuse-of-discretion review applies to this claim, because it rests on a question of plan interpretation, and the Plan grants the Benefits Committee discretion to interpret the Plan. *Id.* at 37-43. This Court's review of that holding is not warranted, for three reasons.

1. First, the court of appeals was correct to conclude that abuse-of-discretion review applies with respect to the particular claim in this case—a Section 1104(a)(1)(D) claim that the fiduciary violated plan terms, which turns on the reasonableness of the fiduciary's interpretation of the plan rather than any asserted conflict with ERISA, where the plan expressly grants the fiduciary discretionary interpretive authority. Although this Court's decisions concerning abuse-of-discretion review under ERISA all concerned claims for benefits under 29 U.S.C. 1132(a)(1)(B), the Court's reasoning also applies to claims based on Section 1104(a)(1)(D) for failure to follow plan terms. In *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U.S. 101 (1989), the Court explained that, because ERISA does not specify a standard of review for benefit denials, it was appropriate to turn to principles of trust law. *Id.* at 109-111. The Court noted that under trust law, a fiduciary's decisions are generally reviewed de novo, unless the trust instrument grants the trustee discretionary interpretive authority and the trustee exercises that authority, in which case deferential review applies. *Id.* at 111-115.

The principles the Court relied upon in *Firestone* apply here. Section 187 of the Second Restatement of Trusts provides that "[w]here discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court" absent "an abuse by the trustee of his discretion." Restatement (Second) of Trusts § 187, at 402. Whether there is an abuse of discretion depends, *inter alia*, on the "extent of the discretion" conferred on the trustee, the trustee's motives, and any conflict of interest of the trustee. *Id.* § 187 cmt. d, at 403; see,

*e.g.*, Austin W. Scott et al., *Scott and Ascher on Trusts* § 18.2, at 1342-1343 (5th ed. 2007). In line with those principles, in a suit based on Section 1104(a)(1)(D), if the plan administrator has authoritatively interpreted the plan, and the plan gives the administrator the discretionary authority to do so, then deferential re-view applies to the interpretation.[7]

So long as the plan interpretation is reasonable and consistent with ERISA, it is not an abuse of discre-tion, even if another reasonable interpretation would be more advantageous to participants. But abuse-of-discretion review does not apply to claims that a fidu-ciary breached the duties of loyalty and prudence set out in Section 1104(a)(1)(A)-(C). The duties of loyalty and prudence are not derived from plan terms, but rather are long recognized in trust law and imposed by ERISA itself. Similarly, a claim that a plan fiduci-ary's interpretation of plan terms conflicts with ERISA should be reviewed de novo to the extent it turns on a question of statutory interpretation, as opposed to plan interpretation.

Although the court of appeals correctly decided that abuse-of-discretion review applies to the particu-lar claim here, it did not consider several factors that may bear on whether the fiduciary's interpretation should be accepted. First, if the plan administrator

---

[7] In *Central States, Southeast and Southwest Areas Pension Fund* v. *Central Transport Inc.*, 472 U.S. 559 (1985), a pre-*Firestone* case, the Court gave "significant weight" to the trustees' determination that a multi-employer plan permitted them to audit employer records, because the trust agreement provided that "any construction [of the agreement's provisions] adopted by the Trus-tees in good faith shall be binding," and there was "no evidence of a bad-faith motive." *Id.* at 568 (brackets in original).

has a financial conflict of interest, the court should weigh that factor in its review. *Metropolitan Life Ins. Co.* v. *Glenn*, 554 U.S. 105, 115 (2008); *Firestone*, 489 U.S. at 115. Here, petitioners contend (Pet. 33) that respondents' interpretation "advances the interests of Edison contrary to the interests of Plan participants." Second, the court should consider whether the plan administrator's interpretation of the Plan was a deliberative choice or a post-hoc rationalization. When a fiduciary interprets plan language in the context of a benefits claim, participants are entitled to significant procedural and substantive protections, and the administrator generally must document its reasoning. See 29 U.S.C. 1133; 29 C.F.R. 2560.503-l. In the absence of such a process, a reviewing court should consider whether the fiduciary exercised its discretion to interpret the plan or simply did not consider the matter. See Restatement (Second) of Trusts § 187, cmt. h, at 405 (court will not defer to a trustee who fails to exercise his judgment). In this case, for example, it is unclear when and how respondents exercised their discretionary interpretive authority to authorize revenue sharing. If there is no actual plan interpretation, no deference is due. Third, the court should consider whether the entity granted discretionary interpretive authority was the one exercising it. The Plan here grants such interpretive authority to the Benefits Committee, but it appears that the decision to invest in the mutual funds was made by the Investment Committees. Pet. App. 72, 211.

The court of appeals likely did not consider these factors because, as described below, the parties did not focus on the standard-of-review question in the

briefing. But they should be considered in assessing a Section 1104(a)(1)(D) claim like the one here.

2. The standard-of-review question was not the focus of the briefing below, and it is unclear whether resolution of that question would change the outcome in this case. The district court decided petitioners' Section 1104(a)(1)(D) claim under both abuse-of-discretion and de novo review because for the first part of the limitations period (August 2001 to November 2001), the Plan did not include language giving the administrator interpretive discretion. Pet. App. 211, 214. The court concluded that nothing in the Plan expressly prohibited revenue sharing and that the course of dealing under the Plan showed that respondents' interpretation was "correct." *Id.* at 214-219.

Petitioners appealed, but their opening brief did not address whether abuse-of-discretion or de novo review applied to their Section 1104(a)(1)(D) claim. Instead, they argued that the Plan unambiguously prohibited revenue sharing and that, even if the plan were ambiguous, the district court should have denied summary judgment because there were disputed factual issues. Pet. C.A. Br. 32-38. Petitioners' brief did not cite *Firestone* or address whether a plan interpretation rendered outside the context of a benefits decision should be treated differently from an interpretation in that context. In their answering brief, respondents contended that their plan interpretation was entitled to deference, but they also argued that the district court's interpretation was correct under de novo review. Resp. C.A. Br. 46-52. In their reply brief, petitioners argued for the first time on appeal that deferential review is inapplicable in the context of

a Section 1104(a)(1)(D) claim. See Pet. C.A. Reply Br. 43-45.

Although the court of appeals did decide the standard-of-review question, this case would be a poor vehicle for considering that question. Because the question was barely briefed below, the court did not consider various factors that might affect the application of abuse-of-discretion review. Moreover, there is a substantial question whether petitioners would prevail even under de novo review. The district court determined that respondents' interpretation was correct on de novo review, Pet. App. 217, and the court of appeals relied on the same extrinsic evidence as the district court in upholding the interpretation under abuse-of-discretion review, *id.* at 43-45. And, before this Court, rather than contest that extrinsic evidence, petitioners instead argue that the plan terms are unambiguous (and therefore could not be overcome by extrinsic evidence), see Cert. Reply Br. 10 n.9—an argument that does not depend on the standard of review.

3. Finally, there is no disagreement in the circuits on the question whether, in a suit based specifically on 29 U.S.C. 1104(a)(1)(D), deferential review applies to a plan administrator's interpretation when the plan gives the administrator discretionary interpretive authority and the claim turns on the reasonableness of the interpretation. The only other court that has expressly considered the question has agreed that abuse-of-discretion review applies in that situation. See *Ganton Techs., Inc.* v. *National Indust. Grp. Pension Plan*, 76 F.3d 462, 466-467 (2d Cir. 1996).

Petitioners cite (Pet. 28-31) decisions from the Second and Third Circuits, but those decisions address

claims of breach of the fiduciary duties of loyalty and prudence under Section 1104(a)(1)(A) and (B), not a claim that a fiduciary failed to follow plan terms in violation of Section 1104(a)(1)(D). Post-*Firestone*, there is some confusion in the circuits on the question whether deferential review applies to a claim of breach of the duties of loyalty or prudence, where the claim turns on plan interpretation and the plan grants the administrator discretionary authority,[8] and there

---

[8] In *John Blair Communications, Inc. Profit Sharing Plan* v. *Telemundo Group, Inc. Profit Sharing Plan*, 26 F.3d 360, 368-370 (1994), the Second Circuit held that de novo review applies to a claim that the fiduciary breached its duty of loyalty by using investment gains from one plan's assets to benefit another plan. But see *Ganton Techs.*, 76 F.3d at 466-467 (applying deferential review to a breach-of-loyalty claim without citing *John Blair*). In *In re Unisys Savings Plan Litigation*, 173 F.3d 145, 154, cert. denied, 528 U.S. 950 (1999), the Third Circuit applied de novo review to a claim that fiduciaries breached the duties of loyalty and prudence. See *Struble* v. *New Jersey Brewery Emps.' Welfare Trust Fund*, 732 F.2d 325, 333 (3d Cir. 1984); but see *Moench* v. *Robertson*, 62 F.3d 553, 565-568 (1995), cert. denied, 516 U.S. 1115 (1996) (applying deferential review to breach-of-fiduciary-duty claims in the context of an employee stock ownership plan), abrogated by *Fifth Third Bancorp*, 134 S. Ct. at 2467.

In *Tussey* v. *ABB, Inc.*, 746 F.3d 327, 333-335, 336, 338 (2014), petition for cert. pending, No. 14-130 (filed Aug. 5, 2014), the Eighth Circuit held that abuse-of-discretion review applies to a plan interpretation that arises in the context of claims that fiduciaries breached the duties of prudence and loyalty. Although that case included a Section 1104(a)(1)(D) claim, see No. 2:06-CV-4305, 2012 WL 1113291, at *14 (W.D. Mo. Mar. 31, 2012), the Eighth Circuit did not address the standard of review applicable to it, see 746 F.3d at 338.

In *Hunter* v. *Caliber System, Inc.*, 220 F.3d 702, 709-712 (2000), the Sixth Circuit applied deferential review to a claim of violation of ERISA's anti-cutback provision, 29 U.S.C. 1054(g),

is a petition pending on that question. See *Tussey* v. *ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014), petition for cert. pending, No. 14-130 (filed Aug. 5, 2014). But that confusion does not warrant further review of the standard-of-review holding in this case, because a claim of failure to follow plan terms is fundamentally different from a claim that a fiduciary was imprudent or disloyal, in violation of the requirements of ERISA itself. See p. 18, *supra*. For that reason as well, further review of the second question presented is unwarranted.

---

that depended on a plan interpretation. The case also involved fiduciary-breach and failure-to-comply-with-plan claims, but the Sixth Circuit did not separately address the standards of review for them. 220 F.3d at 717-724.

**CONCLUSION**

The petition for a writ of certiorari should be granted with respect to the first question presented. The petition should be denied with respect to the second question presented.

Respectfully submitted.

M. PATRICIA SMITH
*Solicitor of Labor*
G. WILLIAM SCOTT
*Associate Solicitor*
NATHANIEL I. SPILLER
*Counsel for Appellate and Special Litigation*
STACEY E. ELIAS
DAVID M. ELLIS
*Attorneys*
*Department of Labor*

DONALD B. VERRILLI, JR.
*Solicitor General*
EDWIN S. KNEEDLER
*Deputy Solicitor General*
NICOLE A. SAHARSKY
*Assistant to the Solicitor General*

AUGUST 2014